UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JARIO PINEDA, EMERITO S. ALONZO, JORJE
JORDAN, ENRIQUE MENDES, MANUEL PEREZ,
DEMECIO RAMOS, MANUEL DeJESUS RAMOS,
JULIO VILLEDA, and VITALINO VILLEDA,

                     Plaintiffs,

            - *against* -

MASONRY CONSTRUCTION, INC., CARMODY
BUILDING CORP., CARMODY MASONRY CORP.,
and BIAGIO "BENNIE" CANTISANI,

                   Defendants.

**09 Civ. 2356 (CS) (PED)**

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE CATHY SEIBEL,
       UNITED STATES DISTRICT JUDGE**

**I.    INTRODUCTION**

On March 13, 2009, Plaintiffs commenced the instant action against Masonry

Construction, Inc. ("MCI"), Carmody Building Corp. ("CBC"), Carmody Masonry Corp.

("CMC"), and Biagio "Bennie" Cantisani ("Cantisani") (collectively "Defendants"). Docket # 1

(Complaint ("Compl.")). Plaintiffs are manual laborers who worked for Defendants between

January 1, 2003 and December of 2008, and bring the present action pursuant to the Fair Labor

Standards Act ("FLSA") and New York State Labor Law ("NYLL") for Defendants' failure to

pay overtime wages. Plaintiffs also assert a claim under NYLL for Defendants' failure to pay

regular wages due and owing to them. Plaintiffs Demecio Ramos ("D. Ramos"), Manuel

DeJesus Ramos ("M. Ramos"), and Julio Villeda ("J. Villeda") also bring claims for breach of

contract based upon Defendants' failure to satisfy "I.O.U.s" issued to them in lieu of regular

wages.  Additionally, all Defendants bring a claim pursuant to New York Business Corporation
Law to inspect Defendants' books and records.

On September 2, 2010, the Court struck Defendants' Answer, Docket # 7 (Answer), on
account of Defendants' failure to comply with certain discovery orders.  Docket # 25.  The Court
indicated that it would enter judgment in favor of Plaintiffs, id., and referred the matter to me for
an inquest as to Plaintiffs' damages.  Docket # 26.  Having completed the inquest, for the reasons
set forth below, I respectfully recommend that the Court enter judgment against Defendants in
the total amount of $420,645.42.  This judgment consists of $221,142.45 in overtime wages,
$190,590.97 in liquidated damages, and $8,912.00 in contract damages.[1]

## II.    DISCUSSION

### A.    Applicable Law

#### 1.    *Federal and State Labor Laws*

##### a.    Unpaid Overtime Wages

FLSA and NYLL require employers to "compensate employees who work over forty
hours per week with overtime pay at the rate of one and one-half times the regular rate."  Wong
v. Hunda Glass Corp., 09 Civ. 4402 (RLE), 2010 U.S. Dist. LEXIS 62653, *2 (S.D.N.Y. June
23, 2010) (citing 29 U.S.C. §§ 207(a)(1)).  "Even when wages exceed the minimum prescribed
by Congress, [employers] must respect the statutory policy of requiring the employer to pay one
and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]."
Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944).  Under the FLSA, employees must
raise claims for unpaid overtime within two years of a non-willful violation, or within three years

---

[1] Because this matter has been referred to me for the limited purpose of determining Plaintiffs'
damages, I have not analyzed and make no recommendation as to Plaintiffs' claim under New
York Business Corporation Law to inspect Defendants' books and records.

of a willful violation. See 29 U.S.C. § 255(a). Under NYLL, employees have six years to raise claims for unpaid overtime wages. N.Y. Lab. Law § 663(1), (3).

An employee bringing an action for unpaid overtime wages under the FLSA has the burden of proving that he performed work for which he was not properly compensated. Grochowski v. Phoenix Constr., Ypsilon Constr. Corp., 318 F.3d 80, 87 (2d Cir. 2003) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). Employers are required to "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c).[2] If an employer fails to keep such records, the plaintiff may meet his burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Grochowski, 318 F.3d at 87. A plaintiff may do so solely through his own recollection. See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); Zeng Liu v. Jen Chu Fashion Corp., 00 Civ. 4221 (RJH) (AJP), 2004 U.S. Dist. LEXIS 35, *3 (S.D.N.Y. Jan. 7, 2004) (where no documents are produced as a result of defendant's default, "plaintiff['s] recollection and estimates of hours worked are presumed to be correct"). Once the plaintiff meets this burden, "[t]he burden then shifts to the employer to present evidence either of the precise wages paid or evidence to 'negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'" Doo Nam Yang, 427 F. Supp. 2d at 332, 335 (citing Anderson, 328 U.S. at 688).[3]

---

[2] Similar record-keeping requirements exist under New York law. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6.

[3] NYLL incorporates a similar standard. See Doo Nam Yang, 427 F. Supp. 2d at 332 n.3 (citing New York Lab. Law § 196-a).

### b.   Liquidated Damages

In addition to unpaid overtime wages, employees may seek liquidated damages under FLSA and NYLL.  Under the FLSA, an employee can be awarded liquidated damages in an additional amount equal to the unpaid overtime wages.  29 U.S.C. § 216(b).  Like claims for unpaid overtime, claims for liquidated damages under the FLSA must be brought within two years of a non-willful violation, or within three years of a willful violation.  29 U.S.C. § 255(a).  A violation is "willful" under the FLSA when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited," Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 141 (2d Cir. 1999), and the standard under NYLL "does not appreciably differ."  Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002).  Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted.  See, e.g., Jin M. Cao v. Wu. Liang Ye Lexington Restaurant, Inc., No. 08-CV-3725, 2010 U.S. Dist. LEXIS 109373, at *1-2 (S.D.N.Y. Sept. 30, 2010).

Under NYLL, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," claims for liquidated damages may be asserted up to six years after the alleged violation.  See N.Y. Lab. Law § 663(1), (3).  NYLL entitles employees to liquidated damages at a rate of twenty-five percent of the unpaid overtime.  N.Y. Lab. Law § 663(1).

### c.   Unpaid Regular Wages

NYLL § 652(1) requires employers to pay statutorily-determined minimum wages.  If an employee is paid by his employer less than the minimum wage to which he is entitled under NYLL § 652(1), the employee may recover the amount of any such underpayment, together with costs and reasonable attorney's fees.  New York Lab. Law § 663(1).  Moreover, unless the

employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, the employee may recover an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due the employee.  Id.

### 2.    *Default*

When a defendant defaults, the court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages.  Fed. R. Civ. P. 8(b)(6); Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009).  In order to ascertain the amount of damages, the court must conduct an inquiry sufficient to establish them to a "reasonable certainty," Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and documentary evidence can suffice in lieu of an evidentiary hearing.  Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).  Proof of damages must be based upon admissible, authenticated evidence.  House v. Kent Worldwide Machine Works, Inc., 359 Fed. Appx. 206 (2d Cir. 2010).

### B.    The Inquest

On September 8, 2010, I issued a scheduling order, Docket # 27 ("Scheduling Order"), directing Plaintiffs to file and serve proposed findings of fact and proposed conclusions of law, and directing Defendants, thereafter, to file and serve a response thereto.  The Scheduling Order further provided:

> The Court hereby notifies the parties that it may conduct this inquest based solely upon the written submissions of the parties.  See Fustok v. ContiCommodity Servs, Inc., 873 F.2d 38, 40 (2d Cir. 1989).  To the extent that any party seeks an evidentiary hearing on the issue of damages (or other monetary relief), such party must set forth in its submission the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted.

Id. On November 12, 2010, Plaintiffs filed Proposed Findings of Fact and Conclusions of Law, accompanied by affidavits of most (though not all) of the claimants, together with certain other documentation. Docket # 30. Plaintiffs did not request an evidentiary hearing.

On January 24, 2011, Defendants filed a response. Docket # 33 (Affirmation in Opposition). In their response, Defendants pointed out that two of the Plaintiffs – Enrique Mendes ("Mendes") and M. Ramos – had not submitted first-party affidavits and urged that their claims be dismissed as inadequately supported. Id. at ¶¶ 9-11. Defendants also pointed out certain discrepancies in Plaintiffs' documentary submissions, and requested an evidentiary hearing at which Plaintiffs would "give sworn testimony under oath, subject to cross-examination by an attorney, so that whatever is awarded to them is what is just and fair and not what they claim in the papers submitted to the Court." Id. at ¶ 17. Defendants did not, however, identify any witnesses or other evidence that they would submit at a hearing.

On February 24, 2011, counsel appeared for a conference to address Defendants' objections. Following the conference, and after considering the arguments of counsel, I scheduled an evidentiary hearing limited to the claims of Mendes and M. Ramos, the two Plaintiffs who had not submitted their own affidavits. My order stated, in pertinent part:

> [T]he Court has determined that the documentary submissions before the Court are insufficient to ascertain the damages of Manuel DeJesus Ramos and Enrique Mendes to a reasonable certainty. Therefore, an evidentiary hearing is scheduled for March 15, 2011 at 2:30 p.m. regarding the damages of these parties. The evidentiary hearing is limited to the damages of Manuel DeJesus Ramos and Enrique Mendes, and inquiry into the damages of other parties will not be permitted.

Docket # 35. On March 14, 2011, Plaintiffs' counsel submitted a letter to the Court stating, in pertinent part, as follows:

6

> [I] request that the Hearing scheduled for Tuesday, March 15, 2011, be cancelled.
> I cannot produce additional evidence because my two (2) clients are not in the
> United States.

Docket # 36. Accordingly, I have conducted this inquest based on the written submissions of the

parties.

C.    Recommendations As To Damages

Defendants' default constitutes an admission of liability, and I conclude that – except

where specifically indicated below – the documentary evidence submitted by Plaintiffs provides

a sufficient basis from which the Court can reasonably ascertain damages.

1.    *Unpaid Overtime Damages*

Because Plaintiffs assert claims under both the FLSA and NYLL, relief is available under

either statute.  See Wong v. Hunda Glass Corp., 09 Civ. 4402 (RLE), 2010 U.S. Dist. LEXIS

62653, *4-6 (S.D.N.Y. June 23, 2010).  Thus, I will employ NYLL for the purposes of unpaid

overtime claims.  NYLL's six-year statute of limitations covers all of Plaintiffs' overtime wage

claims, except those pre-dating March 19, 2003.[4]

In calculating overtime pay under the FLSA and NYLL, the court must first determine

the employee's regular rate of pay for the relevant periods.  See 29 U.S.C. § 207(a)(1); 12

NYCRR § 142-2.2.  The regular rate of pay is the hourly rate paid to the employee for a typical

week.  See 29 U.S.C. § 207(e); Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419,

424 (1945).  After determining the hourly rate of overtime compensation, the court must next

---

[4] All Plaintiffs other than D. Ramos, J. Villeda, and M. Ramos assert claims for unpaid overtime
dating back to January 1, 2003.  Because the docket reflects that Defendants were served with
the Complaint on March 20, 2009, however, Plaintiffs are only entitled to recover overtime pay
dating back to March 19, 2003 under NYLL.  Therefore, my analysis of damages disregards
claims for overtime pay for the 77 days between January 1, 2003 and March 19, 2003.  As such,
when calculating claims of damages dating back to January 1, 2003, I have subtracted 10.5
weeks of salary to account for the 77 day period in question.

determine the number of overtime hours for which the employer is liable. That, in turn, requires the court to determine the period of liability and the number of overtime hours that Plaintiffs worked during that relevant period.

Plaintiffs – apart from Mendes and M. Ramos, whom I address separately below – demonstrate each of the foregoing elements through affidavits that are based solely upon their individual recollections of the hours worked and the wages paid for the applicable time periods. Defendants have not presented any evidence regarding the wages earned or hours worked by Plaintiffs. Since Defendants have failed to produce such records, Plaintiffs may demonstrate damages by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Grochowski, 318 F.3d at 87. It is well-settled that Plaintiffs may satisfy this burden solely through their own recollections. See, e.g., Doo Nam Yang, 427 F. Supp. 2d at 335. As such, I conclude that the affidavits submitted by Plaintiffs, except where noted, constitute sufficient evidence regarding the wages they received and the hours they worked during the applicable pay periods. Id.

Guided by these principles, I have set forth below my analysis of the overtime wages that should be awarded to each individual Plaintiff.

### a.     Jario Pineda

Jario Pineda ("Pineda") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008.[5] Pineda claims that his hourly salary was $15.00 in 2003 and 2004, $18.00 in 2005, $22.00 in 2006, $25.00 in 2007, and $32.00 in 2008. Pineda claims that he was paid at his regular hourly rate in connection with the

---

[5] Although the affidavits of the various Plaintiffs indicate that they worked "every week" for some period of years, thereby implying that each Plaintiff's damages are based upon a 52 week year, most of the figures provided by Plaintiffs are actually based upon a 50 week year. Where noted herein, some of the Plaintiffs' figures are based upon shorter work years.

overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Pineda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that Pineda is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|---------------------|---------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75[6] |
| 2004 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2006 | $22.00 | $11.00 | 15 | $165.00 | $8,250.00 |
| 2007 | $25.00 | $12.50 | 15 | $187.00[7] | $9,350.00 |
| 2008 | $32.00 | $16.00 | 15 | $240.00 | $12,000.00 |
| | | | | **TOTAL** | **$46,418.75** |

### b.    Demecio Ramos

D. Ramos claims that he worked fifteen (15) hours of overtime every week between January 1, 2006 and the December 31, 2007. D. Ramos claims that his hourly salary was $17.00 in 2006 and $32.00 in 2007. D. Ramos claims that he was paid at his regular hourly rate in

---

[6] This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

[7] Should be $187.50. Here and elsewhere, I have not corrected computational errors which reduce the damages due to Plaintiffs on the theory that Plaintiffs' affidavits should not be read to support a greater award than what is requested therein.

9

connection with the overtime work he performed in 2006 and 2007, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, D. Ramos claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that D. Ramos is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2006 | $17.00 | $8.50 | 15 | $127.50 | $3,825.00[8] |
| 2007 | $32.00 | $16.00 | 15 | $240.00 | $11,040.00[9] |
| | | | | **TOTAL** | **$14,865.00** |

### c.    Julio Villeda

J. Villeda claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2005 and December 31, 2008. J. Villeda claims that his hourly salary was $13.00 from 2005 through 2007, and $15.00 in 2008. J. Villeda claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2005 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, J. Villeda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that J. Villeda is entitled to recover the following overtime wages:

---

[8] This figure is based on a 30 week work year.

[9] This figure is based on a 46 week work year.

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2005 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00[10] |
| 2006 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00 |
| 2007 | $13.00 | $6.50 | 15 | $97.50 | $4,485.00 |
| 2008 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| | | | | **TOTAL** | **$19,860.00** |

### d.    Emerito S. Alonzo

Emerito S. Alonzo ("Alonzo") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008.  Alonzo claims that his hourly salary was $15.00 in 2003, $17.00 in 2004 and 2005, $18.00 in 2006, $24.00 in 2007, and $26.00 in 2008.  Alonzo claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL.  As such, Alonzo claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked.  I conclude that Alonzo is entitled to recover the following overtime wages:

---

[10] This figure is based on a 46 week work year.

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75[11] |
| 2004 | $17.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $17.00 | $8.50 | 15 | $127.50 | $6,375.00 |
| 2006 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2007 | $24.00 | $12.00 | 15 | $180.00 | $9,000.00 |
| 2008 | $26.00 | $13.00 | 15 | $195.00 | $9,750.00 |
| | | | | **TOTAL** | **$41,943.75** |

### e.    Vitalino Villeda

Vitalino Villeda ("V. Villeda") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008.  V. Villeda claims that his hourly salary was $15.00 in 2003 and 2004, and $18.00 between 2005 and 2008.  V. Villeda claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL.  As such, V. Villeda claims that he is entitled to recover fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked.  I conclude that V. Villeda is entitled to recover the following overtime wages:

---

[11] This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $4,443.75[12] |
| 2004 | $15.00 | $7.50 | 15 | $112.50 | $5,625.00 |
| 2005 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2006 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2007 | $18.00 | $9.00 | 15 | $135.00 | $6,750.00 |
| 2008 | $18.00 | $9.00 | 15 | $135.00 | $3,375.00[13] |
| | | | | **TOTAL** | **$33,693.75** |

### f.    Manuel Perez

Manuel Perez ("Perez") claims that he worked eight (8) hours of overtime for every business week between January 1, 2003 and December 31, 2008. Perez claims that his hourly salary was $15.00 in 2003 and 2004, $17.00 in 2005 and 2006, $20.00 in 2007, and $29.00 in 2008. Perez claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Perez claims that he is entitled to recover

---

[12] This figure excludes $1,181.25 in overtime wages that pre-date March 19, 2003.

[13] This figure is based on a 25 week work year.

fifty percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that Perez is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|---|---|---|---|---|---|
| 2003 | $15.00 | $7.50 | 8 | $60.00 | $2,370.00[14] |
| 2004 | $15.00 | $7.50 | 8 | $60.00 | $3,000.00 |
| 2005 | $17.00 | $8.50 | 8 | $68.00 | $3,400.00 |
| 2006 | $17.00 | $8.50 | 8 | $68.00 | $3,400.00 |
| 2007 | $20.00 | $10.00 | 8 | $80.00 | $4,000.00 |
| 2008 | $29.00 | $14.50 | 8 | $116.00 | $5,800.00 |
| | | | | **TOTAL** | **$21,970.00** |

### g.   Jorje Jordan

Jorje Jordan ("Jordan") claims that he worked fifteen (15) hours of overtime for every business week between January 1, 2003 and December 31, 2008. Jordan claims that his hourly salary was $15.00 in 2003, $17.00 in 2004, $12.00 in 2005, and $27.95 between 2006 and 2008. Jordan claims that he was paid at his regular hourly rate in connection with the overtime work he performed between January 1, 2003 and December 31, 2008, and not at the rate of time-and-a-half, as required by FLSA and NYLL. As such, Jordan claims that he is entitled to recover fifty

---

[14] This figure excludes $630 in overtime wages that pre-date March 19, 2003.

percent (50%) of his normal hourly salary with respect to each hour of overtime worked. I conclude that Jordan is entitled to recover the following overtime wages:

| Year | Hourly Rate | Unpaid Balance of Overtime Rate | Overtime Hours | Weekly Overtime Owed | Yearly Overtime Owed |
|------|-------------|--------------------------------|----------------|----------------------|----------------------|
| 2003 | $15.00 | $7.50 | 15 | $112.50 | $900.00[15] |
| 2004 | $17.00 | $8.50 | 15 | $127.50 | $6,375.00 |
| 2005 | $12.00 | $6.00 | 15 | $90.00 | $4,500.00 |
| 2006 | $27.95 | $13.98 | 15 | $209.70 | $10,485.00 |
| 2007 | $27.95 | $13.98 | 15 | $209.70 | $10,485.00 |
| 2008 | $27.95 | $13.98 | 15 | $209.70 | $9,646.20[16] |
| | | | | **TOTAL** | **$42,391.20** |

**h.      Manuel DeJesus Ramos and Enrique Mendes**

Neither M. Ramos nor Mendes have submitted affidavits in support of their claims for overtime pay. Instead, D. Ramos – who claims to be M. Ramos' brother – has submitted an affidavit in which he makes assertions regarding the hours worked and salary earned by M. Ramos. Similarly, non-party Alvaro Coronado ("Coronado") – who claims to be Mendes' brother – submits an affidavit in which he makes assertions regarding the hours worked and

---

[15] This figure is based on an 8 week work year.

[16] This figure is based upon a 46 week work year.

salary earned by Mendes.  Both affidavits purport to be based upon the affiant's "own knowledge and upon documents contained within" their respective files.  Defendants argue that M. Ramos' and Mendes' claims for overtime wages must be dismissed because they "fail to attach an Affidavit or proof in admissible form to support their claims."

"The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." Flaherty v. Filardi, No. 03 Civ. 2167 (LTS)(HBP), 2007 U.S. Dist. LEXIS 4595, at *5 (S.D.N.Y. Jan. 24, 2007) (quoting Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000)).  "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be determined by the trier of fact at trial." Flaherty, No. 03 Civ. 2167 (LTS)(HBP), 2007 U.S. Dist. LEXIS 4595, at *5 (quoting Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005)).

The Second Circuit has explained that "a court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) (abrogated on other grounds by Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000)).  For example, the Hollander court held that a district court had acted within its discretion by striking portions of an affidavit that the district court had described as "more resembling an adversarial memorandum than a *bona fide* affidavit." Hollander, 172 F.3d at 198 (emphasis in the original).  A court may also "simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." Doe v. Nat'l Bd. of Podiatric Med. Examiners, No. 03 Civ. 4034 (RWS), 2004 U.S. Dist. LEXIS 7409, at *4 (S.D.N.Y. April 29, 2004).

Here, although I have determined that the affidavits submitted by the other Plaintiffs constitute sufficient evidence regarding the wages they received and the hours they worked, I conducted a hearing on February 24, 2011, at which counsel were invited to address the sufficiency of the third-party affidavits submitted on behalf of M. Ramos and Mendes.  Docket # 34.[17]  Following that hearing, I entered an order informing the parties that there was insufficient evidence before the Court to establish the damages of M. Ramos and Mendes to a reasonable certainty,[18] and scheduled an evidentiary hearing at which Plaintiffs could present additional evidence.  Docket # 35.  Plaintiffs' counsel subsequently requested that the Court cancel this evidentiary hearing on the basis that he "cannot produce additional evidence because [M. Ramos and Mendes] are not in the United States."  Docket # 36.[19]

---

[17] Although numerous courts have acknowledged that, in the absence of relevant employment records, an employee may rely on his own estimate of the wages earned and the hours worked based on his or her **own recollection**, see, e.g., Doo Nam Yang, 427 F. Supp. 2d at 335; Zeng Liu, 00 Civ. 4221 (RJH) (AJP), 2004 U.S. Dist. LEXIS 35, at *3, the Court is not aware of any authority that would permit an employee to make such a showing based upon estimates contained in third-party affidavits.  The Court need not resolve this question for purposes of the present inquest, however, as I find the third-party affidavits at issue here to be insufficient to demonstrate the damages of M. Ramos and Mendes.

[18] Coronado makes no attempt to substantiate the claim that his affidavit is based upon his "own knowledge" or documents contained within his files.  For example, Coronado does not claim to have worked for any of the Defendants or to have observed any of the events at issue in this case, nor does he indicate how or why he would have come to possess documents regarding his brother's employment with Defendants.  Coronado also fails to identify any of the documents he purports to rely upon.  Because Coronado has not laid any foundation for the statements set forth in his affidavit – many of which are mere legal conclusions – I cannot conclude that a reasonable trier of fact would believe the he had personal knowledge of the matters set forth therein.  Flaherty, No. 03 Civ. 2167 (LTS)(HBP), 2007 U.S. Dist. LEXIS 4595, at *5.  The affidavit of D. Ramos – insofar as it purports to establish the damages of M. Ramos – differs from the Coronado affidavit only in that D. Ramos also worked for the Defendants.  I conclude that D. Ramos' affidavit – like Coronado's affidavit – is insufficient to establish his brother's damages.  Id.

[19] It is worth noting that the Court's February 24, 2011 order, Docket # 35, did not require Plaintiffs to produce M. Ramos and Mendes at the evidentiary hearing.  Plaintiffs could have, but did not, produce D. Ramos, Coronado, or any other witnesses they believed could have substantiated the damages of M. Ramos and Mendes to a degree of reasonable certainty.

Because Plaintiffs have failed to come forward with sufficient evidence of the hours worked and wages earned by M. Ramos and Mendes, their claims for unpaid overtime must be dismissed.

### 2.   *Liquidated Damages*

Under the FLSA, Plaintiffs are entitled to recover liquidated damages in an amount equal to their unpaid overtime wages. 29 U.S.C. § 216(b).  Under NYLL, Plaintiffs are entitled to recover twenty-five percent (25%) of the unpaid overtime as liquidated damages. N.Y. Lab. Law. § 663(1), (3).  To the extent that Plaintiffs' FLSA and NYLL claims overlap, Plaintiffs may recover liquidated damages under both the state and federal statutes. <u>Jin M. Cao</u>, No. 08-CV-3725, 2010 U.S. Dist. LEXIS 109373, at *15-16.  Claims for liquidated damages under the FLSA must be brought within three years of a willful violation. 29 U.S.C. § 255(a).  Claims for liquidated damages under NYLL must be brought within six years of the violation. N.Y. Lab. Law §§ 663(1), (3).  As noted above, Defendants' default in answering the Complaint results in a finding that they willfully violated state and federal labor laws, <u>Jin M. Cao</u>, No. 08-CV-3725, 2010 U.S. Dist. LEXIS 109373, at *1-2, meaning that Plaintiffs may recover liquidated damages under the FLSA for claims arising on or after March 19, 2006.  However, claims that arose prior to that date are time-barred under the FLSA's three-year statute of limitations. <u>Id.</u>[20]  Similarly,

---

[20] Many of the Plaintiffs seek liquidated damages under FLSA dating back to January 1, 2006. However, since Plaintiffs are only entitled to recover liquidated damages under FLSA dating back to March 19, 2006, my analysis of liquidated damages under FLSA disregards all claims of liquidated damages for the 77 days between January 1, 2006 and March 19, 2006. Therefore, when calculating claims of liquidated damages dating back to January 1, 2006, I have subtracted 10.5 weeks of salary to account for the 77 day period in question.

claims that arose prior to March 19, 2003 are time-barred under NYLL's six-year statute of limitations. N.Y. Lab. Law § 663(1), (3).[21]

Guided by these principles, I have set forth below my analysis of the liquidated damages that should be awarded to each individual Plaintiff.

### a.     Jario Pineda

Pineda may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, Pineda is entitled to recover $6,517.50 for 2006,[22] $9,350.00 for 2007, and $12,000 for 2008 – or a total of $27,867.50. Pineda is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $11,604.69. Therefore, the total amount of liquidated damages that should be awarded to Pineda under the FLSA and NYLL is $39,472.19.

### b.     Demecio Ramos

D. Ramos may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2007. Thus, D. Ramos is entitled to recover $2,486.25 for 2006[23] and $11,040.00 for 2007 – or a total of $13,526.25. D. Ramos is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $3,716.25. Therefore, the total amount of liquidated damages that should be awarded to D. Ramos under the FLSA and NYLL is $17,242.50.

---

[21] Since Plaintiffs' claims for overtime wages under NYLL are subject to the same statute of limitation applicable here, and because their claims for overtime wages have already been reduced as noted above, the Court calculates liquidated damages under NYLL by taking 25% of the amount awarded to each of the Plaintiffs, as set forth above.

[22] This figure excludes $1,732.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

[23] This figure excludes $1,338.75 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

### c.      Julio Villeda

J. Villeda may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008.  Thus, J. Villeda is entitled to recover $3,461.25 for 2006,[24] $4,485.00 for 2007, and $5,625.00 for 2008 – or a total of $13,571.25.  J. Villeda is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $4,965.00.  Therefore, the total amount of liquidated damages that should be awarded to J. Villeda under the FLSA and NYLL is $18,436.25.

### d.      Emerito S. Alonzo

Alonzo may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008.  Thus, Alonzo is entitled to recover $5,332.50 for 2006,[25] $9,000 for 2007, and $9,750.00 for 2008 – or a total of $24,082.50.  Alonzo is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $10,485.94.  Therefore, the total amount of liquidated damages that should be awarded to Alonzo under the FLSA and NYLL is $34,568.44.

### e.      Vitalino Villeda

V. Villeda may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008.  Thus, V. Villeda is entitled to recover $5,332.50 for 2006,[26] $6,750.00 for 2007, and $3,375.00 for 2008 – or a total of $15,457.50.  V. Villeda is also entitled to recover twenty-five percent of the overtime wages awarded to him

---

[24] This figure excludes $1,023.75 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

[25] This figure excludes $1,417.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

[26] This figure excludes $1,417.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

under NYLL, or $8,423.44. Therefore, the total amount of liquidated damages that should be awarded to V. Villeda under the FLSA and NYLL is $23,880.94.

### f.    Manuel Perez

Perez may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, Perez is entitled to recover $2,686.00 for 2006,[27] $4,000.00 for 2007, and $5,800.00 for 2008 – or a total of $12,486.00. Perez is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $5,492.50. Therefore, the total amount of liquidated damages that should be awarded to Perez under the FLSA and NYLL is $17,978.50.

### g.    Jorje Jordan

Jordan may recover liquidated damaged under the FLSA for unpaid overtime earned between March 19, 2006 and December 31, 2008. Thus, Jordan is entitled to recover $8,283.15 for 2006,[28] $10,485.00 for 2007, and $9,646.20 for 2008 – or a total of $28,414.35. Jordan is also entitled to recover twenty-five percent of the overtime wages awarded to him under NYLL, or $10,597.80. Therefore, the total amount of liquidated damages that should be awarded to Jordan under the FLSA and NYLL is $39,012.15.

### h.    Manuel DeJesus Ramos and Enrique Mendes

Because I recommend that M. Ramos' and Mendez's claim for overtime wages be dismissed, they should not be entitled to recover liquidated damages.

---

[27] This figure excludes $714.00 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

[28] This figure excludes $1,732.50 in wages pre-dating March 19, 2006 that are unrecoverable under the FLSA.

3.    *Dishonored Checks*

Plaintiffs claim that Defendants issued a total of $75,067.19 in paychecks that were subsequently dishonored by the bank from which they were drawn.  Plaintiffs assert that they are entitled to recover the face amount for each of the dishonored checks pursuant to NYLL § 652(1).

As an initial matter, Defendants argue that Plaintiffs have not presented any admissible evidence that the checks at issue were dishonored.  Indeed, there is nothing on the face of the checks to indicate that they were dishonored, and Plaintiffs have provided the Court with no additional evidence, other than their own affidavits, to demonstrate that the checks were dishonored.  However, Plaintiffs allege in the Complaint that they received paychecks from Defendants that were dishonored by the bank from which they were drawn.  Plaintiffs attached to the Complaint copies of the allegedly dishonored checks.  Defendants' default in answering the Complaint is equivalent to an admission of the allegations set forth in therein – including the allegation that the checks attached to the Complaint were dishonored.  Finkel, 577 F.3d at 83 n.6.  Therefore, Plaintiffs are not required to come forward with additional evidence on that issue.  Id.; see also Fed. R. Civ. P. 8(b)(6).

Plaintiffs are mistaken, however, in claiming that NYLL § 652(1) entitles them to recover the face value for each of the dishonored checks at issue.  NYLL § 652(1) mandates the payment of statutorily determined minimum wages.  New York Lab. Law § 652(1).  It does not impose liability upon an employer for issuing dishonored checks.  Id.  Although Plaintiffs could have pursued the face value of the dishonored checks under any number of legal theories,[29] they have

---

[29] Plaintiffs could have asserted, for example, a claim for maker or indorser liability under Article 3 of New York's Uniform Commercial Code, see N.Y. U.C.C. §§ 3-413 and 3-414, or common law claims for breach of contract and unjust enrichment.  Although Defendants' default
[footnote continued on following page]

failed to do so. As such, Plaintiffs have failed to assert any cause of action that would entitle them to recover the face value of the dishonored checks.

In the absence of such a claim, the Court must construe Plaintiffs' NYLL § 652(1) claim as seeking to recover minimum wages for the pay periods in question, rather than the face value of the dishonored checks. However, Plaintiffs have not provided the Court with evidence sufficient to determine damages pursuant to NYLL § 652(1). Indeed, the vast majority of the dishonored checks at issue do not indicate how many hours Plaintiffs worked with respect thereto, or what pay period the dishonored checks represent. Without this critical information, the Court is unable to determine with reasonable certainty the amount of minimum wages Plaintiffs are entitled to receive under NYLL § 652(1) in connection with the dishonored checks. Accordingly, Plaintiffs' claim for damages under NYLL § 652(1), and for related liquidated damages under NYLL § 198, should be dismissed. Alternatively, the Court may grant Plaintiffs leave to renew this inquest in the event they are able to present evidence regarding the number of hours worked for each of the pay periods in question.

4.    *Breach of Contract Claims Based Upon Unpaid I.O.U.s*

D. Ramos, J. Villedas, and M. Ramos claim that Defendants failed to satisfy what they describe as "I.O.U.s" issued to them by Defendants in lieu of regular wages, and that this failure to pay constitutes a breach of contract. Defendants' default constitutes an admission of liability as to these claims. Fed. R. Civ. P. 8(b)(6); Finkel, 577 F.3d at 83 n.6. D. Ramos has presented the Court with a copy of the "I.O.U." issued to him by Defendants, the outstanding amount of

---

[footnote continued from previous page]

operates as an admission of liability under the legal theories set forth in the Complaint, the default cannot give rise to liability under other legal theories. See Fed. R. Civ. P. 54(c) (a "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment").

which is $5,942.00.  J. Villedas has also presented the Court with a copy of the "I.O.U." issued

to him by Defendants, the outstanding amount of which is $2,970.00.  These "I.O.U.s," together

with the affidavits of D. Ramos and J. Villedas, provide the Court with reasonable certainty

regarding their respective damages thereunder.  Credit Lyonnais Sec. (USA), Inc., 183 F.3d at

155.  Accordingly, D. Ramos should be awarded $5,942.00 pursuant to the "I.O.U." issued to

him, and J. Villedas should be awarded $2,970.00 pursuant to the "I.O.U." issued to him.

Although M. Ramos has not submitted an affidavit to the Court in connection with this

inquest, D. Ramos has submitted an affidavit on his behalf in which he claims (1) that

Defendants issued an "I.O.U." to M. Ramos in the amount of $9,875.00, and (2) that Defendants

never made payment thereon.  D. Ramos also attaches to his affidavit a copy of the "I.O.U."

allegedly issued to M. Ramos.  For the reasons stated above, see supra Section II.C.1.h, I

conclude that this third-party affidavit is insufficient to establish M. Ramos' damages.

Accordingly, M. Ramos' claim pursuant to the "I.O.U." should be dismissed.

D.      Joint and Several Liability

Plaintiffs allege that MCI, CBC, and CMC are "nominally separate entities who are part

of a single integrated enterprise having common ownership and/or management and which

formed a single employer of Plaintiffs."  Compl. ¶ 6.  Plaintiffs further allege that Castisani "was

an owner, partner, or manager" of CMC, id. at 4, and that "Defendants" are liable on each of the

causes of action set forth in the Complaint.  Such allegations, coupled with Defendants' default,

suffice to establish that MCI, CBC, CMC, and Castisani qualify as Plaintiffs' "employer" for

purposes of FLSA and NYLL, and therefore to impose joint and several liability on each of them

for their respective violations of the wage laws.  See Shim v. Millennium Group, LLC, No. 08-

CV-4022 (FB) (VVP), 2010 U.S. Dist. LEXIS 6407, at *2 (E.D.N.Y. Jan. 27, 2010) (on default

24

judgment, finding both individual defendants and corporation liable under FLSA where

complaint contained allegations of actions taken collectively by "Defendants"); Moon v. Kwon,

248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that corporate officer who is considered an

employer under FLSA jointly and severally liable along with the corporation); Ting Yao Lin v.

Hayashi Ya II, Inc., 08 Civ. 6071 (SAS) (AJP), 2009 U.S. Dist. LEXIS 12963, *29-33 (S.D.N.Y.

Jan. 30, 2009) (imposing joint and several liability pursuant to both FLSA and NYLL).

## IV.   **Attorney's Fees**

Both the FLSA and NYLL permit a prevailing employee to recover reasonable attorney's

fees from the employer. 29 U.S.C. § 216(b); New York. Lab. Law § 198.  Plaintiffs have

requested thirty (30) days following entry of an order on damages in which to pursue attorney's

fees.  I recommend that, upon entry of an order on the issue of damages, Plaintiffs be granted

thirty (30) days' leave to file a motion for attorney's fees.

## V.   **Conclusion**

For the foregoing reasons, I respectfully recommend that damages be awarded against

Defendants, jointly and severally, in the amount of **$420,645.42**,[30] as follows:

    A.    **OVERTIME WAGES** in the total amount of **$221,142.45**, to be distributed
among Plaintiffs as follows:

        1.    $46,418.75 – Pineda

---

[30] Notwithstanding my instruction that Plaintiffs "succinctly summarize[ ] what amount(s) of damages (or other monetary relief) are being sought, including the exact dollar amount(s) being sought," Docket # 27 (Scheduling Order for Inquest), Plaintiffs' Proposed Findings of Fact and Proposed Findings of Law Concerning Damages does not make any reference to payment of interest.  Docket # 30.  (The affidavits of certain Plaintiffs assert an entitlement to interest upon certain claims, but do not indicate the applicable interest rate or rely upon any supporting authority.)  Therefore, I do not address whether Plaintiffs are entitled to interest in connection with the award of damages recommended herein.

    2.    $14,865.00 – D. Ramos

    3.    $19,860.00 – J. Villeda

    4.    $41, 943.75 – Alonzo

    5.    $33,693.75 – V. Villeda

    6.    $21,970.00 – Perez

    7.    $42,391.20 – Jordan

B.    **LIQUIDATED DAMAGES** in the total amount of **$190,590.97**, to be distributed among Plaintiffs as follows:

    1.    $39,472.19 – Pineda

    2.    $17,242.50 – D. Ramos

    3.    $18,436.25 – J. Villeda

    4.    $34,568.44 – Alonzo

    5.    $23,880.94 – V. Villeda

    6.    $17,978.50 – Perez

    7.    $39,012.15 – Jordan

C.    **CONTRACT DAMAGES** in the total amount of **$8,912.00** based upon Defendants' failure to make payment upon outstanding "I.O.U.s," to be distributed among Plaintiffs as follows:

    1.    $5,942.00 – D. Ramos

    2.    $2,970.00 – J. Villeda

I recommend that the claims of M. Ramos and Mendes be **DISMISSED**.

I recommend that Plaintiffs' claims pursuant to NYLL § 652(1) be **DISMISSED**, or, in the alternative, that they be granted leave to renew this inquest upon submission of appropriate evidence.

I recommend that, upon entry of an order awarding damages, Plaintiffs be granted thirty (30) days leave to file a motion for attorney's fees.

## VI.   Notice

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation. Fed. R. Civ. P. 6(a). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States District Judge, at the Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, NY 10601-4150, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated:   March 22, 2011
         White Plains, N.Y.


Respectfully submitted

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE